1 | COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP
2 | JOHN J. STOIA, JR. (141757)
THEODORE J. PINTAR (131372)
3 | LESLIE E. HURST (178432)
655 West Broadway, Suite 1900
4 | San Diego, CA 92101-3301
Telephone: 619/231-1058
5 | 619/231-7423 (fax)
johns@csgrr.com
6 | tedp@csgrr.com
leslieh@csgrr.com
7 |
BONNETT, FAIRBOURN,
8 |   FRIEDMAN & BALINT, P.C.
ANDREW S. FRIEDMAN
9 | WENDY J. HARRISON (151090)
2901 N. Central Avenue, Suite 1000
10 | Phoenix, AZ 85012
Telephone: 602/274-1100
11 | 602/274-1199 (fax)
afriedman@bffb.com
12 | wharrison@bffb.com

13 | Attorneys for Plaintiff

**'08 CV 0155 WQH AJB**

FILED

08 JAN 25 PM 1:48

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____

DEPUTY

### UNITED STATES DISTRICT COURT

### SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORGE SALAZAR, on Behalf of Himself and All Others Similarly Situated, ) ) ) | No. |
|                   Plaintiff, ) ) | <u>CLASS ACTION</u> |
|    vs. ) ) | COMPLAINT FOR VIOLATIONS OF THE EQUAL CREDIT OPPORTUNITY ACT, 15 |
| GREENPOINT MORTGAGE FUNDING, INC., a New York corporation, ) ) ) | U.S.C. §1691, THE FAIR HOUSING ACT, 42 U.S.C. §§3601-3619 AND THE CIVIL RIGHTS ACT, 42 U.S.C. §§1981 AND 1982 |
|            Defendant. ) ) | |
| _____ ) | <u>DEMAND FOR JURY TRIAL</u> |

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1    Plaintiff Jorge Salazar, by and through his attorneys, brings this action on behalf of himself

2 and all others similarly situated against defendant Greenpoint Mortgage Funding, Inc. seeking

3 redress for racially discriminatory lending practices under the Equal Credit Opportunity Act, 15

4 U.S.C. §1691, *et seq.* ("ECOA"), the Fair Housing Act, 42 U.S.C. §3601 *et seq.* ("FHA"), and the

5 Civil Rights Act, 42 U.S.C. §§1981 and 1982.

6                                    **INTRODUCTION**

7    1.    This class action challenges defendant's racially discriminatory mortgage lending

8 practices. Greenpoint has engaged in both intentional and disparate impact discrimination through

9 its development and implementation of a specific, identifiable and uniform credit pricing system,

10 (referred to herein as the "Discretionary Pricing Policy"), that provides financial incentives to its

11 loan officers, authorized mortgage brokers and correspondent lenders to make subjective decisions to

12 increase interest rates and charge additional fees and costs to minority borrowers.

13    2.    This policy directly leads to minorities receiving home loans with higher interest rates

14 and higher fees and costs than similarly situated non-minority borrowers.

15    3.    As used in this Complaint, "minority" or "minorities" shall refer to all non-

16 Caucasians and other minority racial groups protected under 42 U.S.C. §§1981, 1982, and 3604, and

17 15 U.S.C. §1691.

18    4.    Plaintiff brings this action on behalf of all minorities (hereinafter collectively referred

19 to as the "Class" or "Class Members") who entered into residential mortgage loan contracts that

20 were originated, financed or purchased by defendant and who were subject to defendant's

21 Discretionary Pricing Policy and paid discretionary charges, including, *inter alia*, discretionary

22 points, fees, yield spread premiums, and other charges.

23    5.    Plaintiff seeks injunctive, declaratory, and equitable relief, punitive damages and

24 other monetary and non-monetary remedies for defendant's racially discriminatory conduct.

25                            **JURISDICTION AND VENUE**

26    6.    This Court has jurisdiction pursuant to 28 U.S.C. §1331, which gives this Court

27 original jurisdiction over civil actions arising under federal law.

28

1    7.    Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) because a substantial

2    part of the events giving rise to plaintiff's and Class Members' claims occurred in this District.  In

3    particular, plaintiff resides in this District and his claims arise out of the purchase of residential

4    properties which are located in this District.  Greenpoint is a corporation which originated and

5    financed the purchase, by plaintiff, of the aforementioned properties located in this District.

6    Greenpoint maintains the business offices that originated plaintiff's loan in this District.

7                                        **PARTIES**

8    8.    Plaintiff Jorge Salazar, is a Latino homeowner who resides at 4172 51st Street, San

9    Diego, CA 92105.

10    9.    Defendant Greenpoint Mortgage Funding, Inc., a New York corporation, offers

11    residential and commercial mortgages nationwide.  It has its principal place of business at 100 Wood

12    Hollow Drive, Novato, CA 94945.  For ease of reference, the Complaint shall hereinafter refer to

13    defendant as "Greenpoint" and/or "defendant."  It is an operating subsidiary of Capital One N.A.,

14    which is a subsidiary of Capital One Financial Corporation.

15                                **FACTUAL ALLEGATIONS**

16    **Historical Discrimination in American Mortgage Lending**

17    10.    Racial discrimination in America's mortgage-lending industry has a long legacy.  As

18    this Complaint attests, that unfortunate history continues to this day due to discriminatory treatment

19    of minority borrowers by mortgage banks such as Greenpoint.

20    11.    According to the 2005 study conducted by the Joint Center for Housing Studies at

21    Harvard University (William Apgar and Allegra Calder, *The Dual Mortgage Market: The*

22    *Persistence of Discrimination in Mortgage Lending*), "[i]n the immediate post-World War II period,

23    racial discrimination in mortgage lending was easy to spot. From government-sponsored racial

24    covenants in the Federal Housing Administration (FHA) guidelines to the redlining practices of

25    private mortgage lenders and financial institutions, minorities were denied access to home mortgages

26    in ways that severely limited their ability to purchase a home. Today, mortgage lending

27    discrimination is more subtle. . . .  [M]ore than three decades after the enactment of national fair

28    lending legislation, minority consumers continue to have less-than-equal access to loans at the best

-2-

1  price and on the best terms than their credit history, income, and other individual financial

2  considerations merit."

3    12.    The passage of civil rights legislation and fair lending laws in the 1960s and 1970s

4  brought an end to the most virulent forms of overt racial discrimination in the housing markets, but

5  throughout the 1980s and 1990s, mortgage lenders found more subtle ways to discriminate,

6  including maintaining offices only in Caucasian neighborhoods and engaging in practices such as

7  redlining (refusing to lend on properties in predominantly minority neighborhoods).

8    13.    After redlining practices were challenged in the 1990s, mortgage lenders changed

9  tactics once again. Lenders began making loans to minorities, but charged them higher interest rates

10 and loan-related fees than they charged to similarly-situated Caucasian borrowers. Loan data that

11 mortgage lenders must now compile and disclose under the federal Home Mortgage Disclosure Act

12 ("HMDA") reveals profound loan pricing disparities between minority borrowers and similarly-

13 situated Caucasian borrowers.

14    14.    The HMDA requires mortgage lenders to report information about the home loans

15 they process each year. In 2005, lenders reported information on more than 30 million home loan

16 applications pursuant to HMDA. In 1989, Congress required lenders to begin disclosing information

17 about mortgage borrowers' race and ethnicity.   In 2004, concerned with potential racial

18 discrimination in loan pricing and recognizing that racial or other types of discrimination can occur

19 when loan officers and mortgage brokers have latitude in setting interest rates, the Federal Reserve

20 Board began requiring lenders to also report information concerning rates, points, and fees, charged

21 to borrowers on high-cost loans.

22    15.    According to the Federal Reserve, both 2004 and 2005 HMDA data revealed that

23 "Blacks and Hispanic whites were more likely . . . to have received higher-priced loans than non-

24 Hispanic whites . . . [which has] increased concern about the fairness of the lending process."

25 Robert B. Avery, Kenneth P. Brevoort and Glenn B. Canner, *Higher-Priced Home Lending and the*

26 *2005 HMDA Data*, Federal Reserve Bulletin at A124 (*Federal Reserve Bulletin*)

27 (http://www.federalreserve.gov/pubs/bulletin/2006/hmda/bull06hmda.pdf (last viewed January 24,

28 2007).)

16.    HMDA data for 2004 reveals profound loan pricing disparities between Hispanic borrowers and non-Hispanic whites even after controlling for borrowers' gender, income, property location, and loan amount. After accounting for those differences in the 2004 HMDA data, Hispanic borrowers were still almost twice as likely to receive a higher-rate home loan as non-Hispanic whites. (http://www.responsiblelending.org/pdfs/Testimony-Ernst061306.pdf [last viewed January 24, 2008].)  In an October 2006 speech, the Vice-Chairman of the Federal Deposit Insurance Corporation, Martin Gruenberg, discussed the 2004 HMDA data and observed that that data "clearly indicated" that Hispanics are more likely to receive high-cost home loans than are non-Hispanic whites.  (http://www.fdic.gov/news/news/speeches/archives/2006/chairman/spoct1806.html [last viewed December 19, 2007].)

17.    Likewise, HMDA data for 2005 shows that "for conventional home-purchase loans, the gross mean incidence of higher-priced lending was 54.7 percent for blacks and 17.2 percent for non-Hispanic whites, a difference of 37.5 percentage points." *Federal Reserve Bulletin* at A159. The situation is similar for refinancings, where there is a difference of 28.3 percentage points between blacks and non-Hispanic whites. *Id.*

18.    The Association of Community Organizations for Reform Now (ACORN) released a report entitled *The High Cost of Credit: Disparities in High-priced Refinanced Loans to Minority Homeowners in 125 American Cities*, dated September 27, 2005, which found that "[i]n every metropolitan area where at least 50 refinances were made to African-American homeowners, African-Americans were more likely to receive a high-cost loan than White homeowners." *Id.* at 12.

19.    A growing number of research studies and investigations show that significant racial disparities still exist.  California Reinvestment Coalition, et al., *Paying More for the American Dream: A Multi-State Analysis of Higher Cost Home Purchase Lending* (March 2007) (http://www.nedap.org/pressroom/documents/2007_Report-2005_HMDA.pdf [last viewed January 24, 2008]; Stephen L. Ross, *The Continuing Practice and Impact of Discrimination* (June 2005, revised July 2006) (Univ. of Connecticut, Department of Economics Working Paper 2005-19R) (http://www.econ.uconn.edu/working/2005-19r.pdf [last viewed January 24, 2008].)

20.     Moreover, and importantly, research studies have suggested that borrowers' credit profiles cannot fully explain why some borrowers, and not others, are saddled with higher cost loans. Researchers have raised "doubts that risk can adequately explain racial differences" in high-cost loans. Calvin Bradford, Center for Community Change, *Risk or Race? Racial Disparities and the Subprime Refinance Market* (May 2002) (http://www.knowledgeplex.org/kp/report /report/relfiles/ccc_0729_risk.pdf [last viewed January 24, 2008].) In other words, "evidence suggests that weak borrower credit profiles do not fully explain why some borrowers get stuck with higher-cost home loans." California Reinvestment Coalition, *Paying More for the American Dream.*

## GREENPOINT'S DISCRIMINATORY LENDING POLICY

**Greenpoint's Relationship With its Mortgage Brokers and Correspondent Lenders**

21.     Greenpoint is among America's leading mortgage lenders. Defendant originates and funds mortgage loans through loan officers, brokers and through a network of correspondent lenders.

22.     On information and belief, Greenpoint's loan officers, mortgage brokers and correspondent lenders broker and fund loans in collaboration with defendant, and in conformance with defendant's Discretionary Pricing Policy.

23.     Greenpoint has established, implemented and continues to implement its Discretionary Pricing Policy, causing minority borrowers to pay subjective fees such as yield spread premiums and other mortgage-related finance charges at higher rates than similarly-situated non-minority borrowers. By its Discretionary Pricing Policy, defendant has intentionally discriminated against plaintiff and the Class, systematically giving them mortgage loans with less favorable conditions than were given to similarly situated non-minority borrowers. This pattern of discrimination is not the result of random or non-discriminatory factors. Rather, it is a direct result of defendant's business model and loan-funding practices.

24.     Greenpoint's authorized loan officers, mortgage brokers and correspondent lenders receive part or all of their compensation from defendant based on the interest rate charged to the borrower. Defendant's loan officers, authorized brokers and correspondents receive more compensation from defendant when they steer their clients into Greenpoint loans with higher interest

1 rates, and less compensation when they place their clients into Greenpoint loans with lower interest
2 rates.

3      25.    Greenpoint intentionally and actively implements its Discretionary Pricing Policy in
4 a variety of ways, including actively educating loan officers and brokers about defendant's credit
5 policies and procedures and directing loan officers and brokers regarding the marketing of loan
6 products.

7      26.    Greenpoint evaluates and monitors its loan officers, authorized brokers and
8 correspondents to ensure that they comply with defendant's loan pricing policies and procedures.

9      27.    Greenpoint's Discretionary Pricing Policy permits its loan officers, authorized
10 mortgage brokers and correspondent lenders subjectively to charge certain loan applicants, including
11 minority loan applicants, yield spread premiums and other discretionary fees and charges.

12      28.    Based on the HMDA data for 2004 through 2006, minorities who have taken out
13 home mortgage loans from Greenpoint are almost 50% more likely to have received a high-APR
14 loan than non-minorities who have taken out loans from Greenpoint.

15      29.    This pattern of discrimination cannot be justified by business necessity, and could be
16 avoided through the use of alternative policies and procedures that have less discriminatory impact
17 and no less business efficacy.

18 **Greenpoint's Discretionary Pricing Policy: Designed to Discriminate**

19      30.    Greenpoint discriminates through its authorized mortgage brokers.  Authorized
20 mortgage brokers act as defendant's agents in originating mortgage loans.  Authorized mortgage
21 brokers enter into agreements with defendant to accept loan applications on behalf of defendant;
22 communicate to loan applicants financing terms and rates set by defendant; tell loan applicants about
23 defendant's various financing options; and ultimately originate mortgage loans funded by defendant
24 using defendant's forms and in accordance with defendant's policies and procedures.

25      31.    Likewise, Greenpoint's authorized correspondent lenders and loan officers, acting as
26 defendant's agents, work with Greenpoint to make loans in accordance with Defendant's credit
27 policies and procedures.  Defendant funds correspondent-generated loans before or shortly after they
28 go to closing.

32.    Greenpoint then funds loans originated by its loan officers, authorized mortgage brokers and correspondent lenders, sets the terms and conditions of credit on those loans, and shoulders part or all of the risk on such loans.  Defendant actively and intentionally enforces its credit policies through its authorized loan officers, mortgage brokers and correspondent lenders in a variety of ways.  Among other things, defendant supplies its loan officers, correspondent lenders and mortgage brokers with an array of loan-related forms and agreements, including loan contracts, loan applications, and instructions on completing loan applications and contracts.

33.    Once a loan applicant has provided credit information through a loan officer, mortgage broker or correspondent lender, Greenpoint performs a facially objective credit analysis. Defendant, at this point, evaluates numerous risk-related credit variables, including debt-to-income ratios, loan-to-value ratios, credit bureau histories, debt ratios, bankruptcies, automobile repossessions, prior foreclosures, payment histories, credit scores, and the like.

34.    Greenpoint derives a risk-based financing rate from these objective factors, which defendant and others in the mortgage industry simply call the "par rate." Defendant's brokers and correspondent lenders can also estimate the par rates by referring to an applicant's credit bureau-determined credit score.

35.    Although Greenpoint's initial analysis applies objective criteria to calculate this risk-related interest rate, defendant's Discretionary Pricing Policy authorizes its loan officers, brokers and correspondent lenders to mark up that rate later and also impose additional non-risk-based charges, including yield spread premiums, and other discretionary fees.  Defendant regularly communicates applicable par rates, authorized yield spread premiums, and other discretionary fees to its loan officers, brokers and correspondent lenders via "rate sheets" and other communications.

36.    Greenpoint gives its loan officers, authorized mortgage brokers and correspondent lenders discretion to impose yield spread premiums and other subjective fees on borrowers.  When borrowers pay yield spread premiums, defendant shares in additional income generated by the premium because the yield spread premium-affected borrower is locked into a higher interest rate going forward on Greenpoint's loan than they would be if they had been placed in a par rate loan without a yield spread premium.

37.    Defendant's borrowers pay yield spread premiums and other discretionary fees that inflate their finance charges, not knowing that a portion of their finance charges are non-risk-related.

38.    Defendant's Discretionary Pricing Policy causes persons with identical or similar credit scores to pay differing amounts for obtaining credit. Such subjective loan pricing – which by design imposes differing finance charges on persons with the same or similar credit profiles - disparately impacts defendant's minority borrowers.

39.    While Greenpoint's use of its Discretionary Pricing Policy for all loan applicants might appear to be facially neutral, defendant's use of yield spread premiums and other discretionary fees disproportionately and adversely affects minorities (relative to similarly situated non-minorities). Defendant's Discretionary Pricing Policy causes minorities to pay disparately more finance charges than similarly situated non-minorities. As the HMDA data, cited herein, indicates, minorities are substantially more likely than similarly situated non-minorities to pay such charges, after controlling for credit risk.

40.    Greenpoint's Discretionary Pricing Policy is in fact intentionally discriminatory. In an attempt to insulate themselves from the discriminatory decision-making, defendant intentionally designed its subjective and discriminatory Discretionary Pricing Policy to allow and encourage its lending agents to obtain greater profits from minority borrowers. As described above, defendant's Discretionary Pricing Policy by design discriminates against minority borrowers and directly causes this disparate impact.

**GREENPOINT IMPOSED DISCRIMINATORY FEES ON PLAINTIFF**

41.    Greenpoint's discriminatory Discretionary Pricing Policy directly damaged plaintiff and the Class.

42.    In August 2006, Mr. Salazar refinanced his home and rental property, 4172 and 4174 51st Street, San Diego, California, respectively with a mortgage loan issued by Greenpoint in the amount of $475,000. TLN Financial was the mortgage broker on the home refinancing.

43.    According to his Final Borrower Statement (attached hereto as Exhibit 1), a yield spread premium in the amount of $2,375 was assessed on Mr. Salazar's loan on a "POC" basis (*i.e.*, paid outside of closing) by Greenpoint. Mr. Salazar also paid an $11,625.00 origination fee to his

1  broker, TLN Financial, in connection with his loan. This discretionary origination fee and the yield

2  spread premium were assessed pursuant to Greenpoint's Discretionary Pricing Policy.

3       44.    TLN Financial and Greenpoint knew that Mr. Salazar, who primarily speaks Spanish,

4  was a minority borrower. The TLN Financial employee who brokered plaintiff's Greenpoint loan in

5  conformance with Greenpoint's discriminatory credit pricing policies was aware of his Latino

6  ethnicity.

7  **CLASS ACTION ALLEGATIONS**

8       45.    Plaintiff repeats and re-alleges each allegation above as if set forth herein in full.

9       46.    This class action is brought by plaintiff on behalf of himself and all minority

10  borrowers (the "Class") who entered into residential mortgage loan contracts that were originated,

11  financed or purchased by Greenpoint and who were subject to defendant's Discretionary Pricing

12  Policy, and as a result of such policy were subject to discretionary fees and charges, including, *inter*

13  *alia,* discretionary points, fees, yield spread premiums and other charges.

14       47.    Plaintiff sues on his own behalf, and on behalf of a class of persons under Rule 23(a)

15  and (b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure.

16       48.    Plaintiff does not know the exact size of the Class or identities of Class Members,

17  since that information is in the exclusive control of defendant. Plaintiff believes that the Class

18  includes many thousands, or tens of thousands of individuals, who are geographically dispersed

19  throughout the United States. Therefore, the Class is so numerous that joinder of all members is

20  impracticable.

21       49.    Class Members have been subject to and affected by defendant's practice of assessing

22  yield spread premiums and other discretionary fees on mortgage loans. There are questions of law

23  and fact that are common to the Class and that predominate over any questions affecting only Class

24  Members. These questions include, but are not limited to, the following:

25       (a)    the nature and scope of defendant's policies and procedures concerning the

26  assessment of yield spread premiums and other discretionary fees on mortgage loans it funds;

27       (b)    whether defendant discriminated against Class Members by charging them

28  higher interest, fees, and costs, than defendant charge similarly situated non-minority borrowers;

1         (c)    whether defendant's intent in its discriminatory policies and procedures was

2    racially motivated;

3         (d)    whether defendant can articulate any legitimate non-discriminatory reason for

4    its policies and procedures;

5         (e)    whether defendant and its subsidiaries are creditors under the ECOA because,

6    in the ordinary course of business, they participate in the decision of whether or not to extend credit

7    to consumers;

8         (f)    whether defendant's policies and procedures regarding yield spread premiums

9    and other discretionary fees have a disparate impact on minority borrowers;

10         (g)    whether defendant has any business justification for its policies and

11    procedures;

12         (h)    whether there is a less discriminatory alternative to these policies and

13    procedures;

14         (i)    whether defendant devised and deployed a scheme or common course of

15    conduct that acted to deceive plaintiff and Class Members;

16         (j)    whether the Court can enter declaratory and injunctive relief; and

17         (k)    the proper measure of disgorgement or monetary relief.

18        50.    Plaintiff's claims are typical of the claims of the Class, and do not conflict with the

19    interests of any other Class Members, in that plaintiff and Class Members were subjected to yield

20    spread premiums and other discretionary fees that have disproportionately affected minority

21    borrowers.

22        51.    Plaintiff will fairly and adequately represent the interests of the Class. Plaintiff is

23    committed to vigorous prosecution of the Class's claims, and has retained attorneys who have

24    extensive experience in consumer protection and credit discrimination actions and class actions.

25        52.    Greenpoint has acted or refused to act on grounds generally applicable to the Class,

26    thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to

27    the class as a whole.

28

53.    A class action is superior to other methods for the speedy and efficient adjudication of this controversy. A class action regarding the issues in this case does not create any problems of manageability.

## ACCRUAL, FRAUDULENT CONCEALMENT, CONTINUING VIOLATION, AND EQUITABLE TOLLING

54.    Plaintiff and Class Members did not know, and could not reasonably have known, that they would receive from Greenpoint mortgage loans with worse terms and higher costs and fees than non-minorities. Their claims did not accrue until shortly before the filing of this action.

55.    Greenpoint's discriminatory conduct was inherently self-concealing. Greenpoint knew that plaintiff and the Class could not determine the relationship between the terms, fees, and costs of their loans to those available to non-minorities. Greenpoint knew that the terms, fees, and costs provided to minorities, unbeknownst to them, were substantially worse than the loans provided to non-minorities.

56.    Greenpoint has not released or provided information about its discrimination against plaintiff and the Class, and has actively and fraudulently concealed its discriminatory practices.

57.    As a result of the foregoing, plaintiff and Class Members in the exercise of due diligence could not have reasonably discovered the discriminatory practices, and did not do so until just recently. For the reasons alleged above, Class Members still do not know that they have been and continue to be injured by Greenpoint's discriminatory conduct.

58.    Greenpoint has committed discriminatory acts throughout the limitations period.

59.    There is a substantial nexus between the acts of discrimination occurring within the limitation periods prior to filing suit, and the acts of discrimination before that time. The acts involve the same type of discrimination and are recurring, not isolated events.

60.    Greenpoint specifically misled plaintiff and Class Members into believing that the mortgage-related terms, fees, and costs they were offered were fair, reasonable, and the same as those offered to non-minorities, and took steps to conceal its fraudulent and unfair conduct.

61.    The statute of limitations applicable to any claims that plaintiff or other Class Members have brought or could bring as a result of the unlawful and fraudulent concealment and

- 11 -

1   course of conduct described herein, have been tolled as a result of Greenpoint's fraudulent

2   concealment. In addition, plaintiff and the Class did not and could not have discovered their causes

3   of action until the time alleged below, thereby tolling any applicable statute of limitations.

4                                         **COUNT I**

5               **Violations of the Equal Credit Opportunity Act**

6                       **15 U.S.C. §§1691 - 1691f**

7         62.    Plaintiff repeats and re-alleges the allegations contained in paragraphs above as if

8   fully set forth herein.

9         63.    Greenpoint engages in credit transactions through its offering, granting, and

10   purchasing of residential mortgage loans.

11         64.    By imposing higher interest rates and other discretionary fees on residential mortgage

12   loans to plaintiff and Class Members than it imposed on non-minority mortgage borrowers,

13   Greenpoint has discriminated against plaintiff and the Class with respect to a credit transaction on

14   the basis of race in violation of the Equal Credit Opportunity Act. 15 U.S.C. §1691(a).

15         65.    In addition, defendant's pricing policies and procedures (including yield spread

16   premiums), which provide financial incentives to its loan officers, mortgage brokers and

17   correspondent lenders to make subjective decisions to increase interest rates and charge additional

18   fees and costs, have a disparate impact on plaintiff and the Class.

19         66.    As a proximate result of defendant's violation of 15 U.S.C. §1691, plaintiff and the

20   Class have been injured and are entitled to injunctive and declaratory relief and damages, or make

21   whole equitable relief.

22         67.    In addition, defendant's conduct as alleged herein was intentional, willful, wanton,

23   reckless, malicious, outrageous, or otherwise aggravated beyond mere negligence. Greenpoint acted

24   with malice and reckless indifference to the federally protected rights of plaintiff and the Class. As a

25   result, plaintiff and the Class are entitled to punitive damages.

26         68.    Moreover, Greenpoint continues to discriminate in violation of the ECOA against

27   Class Members every time defendant provides a home mortgage loan as described herein. If not

28   enjoined from such violation by the Court, defendant will continue to engage in conduct that

1  disregards the rights of plaintiff and the Class, and cause plaintiff and the Class irreparable injury for

2  which there is no adequate remedy at law.  15 U.S.C. §1691(e).

3      69.    Plaintiff and the Class ask this Court to declare the rights of the parties herein

4  regarding Greenpoint's obligation to participate in credit transactions without discriminating against

5  applicants for credit on the basis of the applicants' race.

**COUNT II**

**Racial Discrimination**
**42 U.S.C. §1981**

7      70.    Plaintiff repeats, re-alleges, and incorporates the allegations contained in the

paragraphs above as if fully set forth herein.

10     71.    Greenpoint intentionally discriminated against plaintiff and the Class by charging

higher interest rates and other fees and costs than were charged to similarly situated non-minority

borrowers.

13     72.    Defendant unlawfully discriminated against plaintiff and the Class in (i) formation of

contracts, (ii) making, performance, modification, and termination of contracts, (iii) the enjoyment of

all benefits, privileges, terms and conditions of the contractual relationship, and/or (iv) conduct that

interferes with the right to establish and enforce contract obligations.

17     73.    Defendant's actions violate 42 U.S.C. §1981, as well as the rights of plaintiff and the

Class under the Fifth, Thirteenth, and Fourteenth Amendments to the Constitution of the United

States.

20     74.    Plaintiff and the Class are entitled to injunctive and declaratory relief and damages, or

make whole equitable relief as a result of defendant's discriminatory conduct.

22     75.    At no time has defendant undertaken corrective action to ameliorate its racially

discriminatory practices.  Greenpoint continues to reap the profits of its discriminatory practices and

continues to discriminate.  Defendant's conduct as alleged herein was intentional, willful, wanton,

reckless, malicious, outrageous, or otherwise aggravated beyond mere negligence.  Defendant has

acted with malice and reckless indifference to the federally protected rights of Plaintiff and Class

Members.  As a result, plaintiff and the Class are entitled to punitive damages.

## COUNT III

### Racial Discrimination
### 42 U.S.C. §1982

76.    Plaintiff repeats, re-alleges, and incorporates the allegations contained in the paragraphs above as if fully set forth herein.

77.    Section 42 U.S.C. §1982 provides that all citizens of the United States "shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."

78.    Greenpoint has discriminated against plaintiff and the Class with respect to its home mortgage loans by charging plaintiff and the Class higher interest rates and other discretionary fees than defendant has charged similarly situated non-minority consumers.  As a result of defendant's conduct, plaintiff and the Class have not had the same right as Caucasians to inherit, purchase, sell, hold, and convey real property.  Defendant has thereby violated 42 U.S.C. §1982.

79.    Defendant's violation of 42 U.S.C. §1982 was intentional and malicious.

80.    As a proximate result of defendant's violation of 42 U.S.C. §1982, plaintiff and the Class have been injured, and are entitled to injunctive and declaratory relief and damages, or make whole equitable relief.  In addition, defendant's conduct as alleged herein was intentional, willful, wanton, reckless, malicious, outrageous, or otherwise aggravated beyond mere negligence. Defendant acted with malice and reckless indifference to the federally protected rights of Plaintiff and the Class.  As a result, plaintiff and Class Members are entitled to punitive damages.

### COUNT IV

### Violation of the Fair Housing Act
### 42 U.S.C. §§3601 – 3619

81.    Plaintiff repeats and re-alleges the allegations in the paragraphs above as if fully set forth herein.

82.    Mortgage lending and the providing of residential mortgage loans is a "residential real estate-related transaction" within the meaning of the FHA.  42 U.S.C. §3605(b).

83.    By imposing higher interest rates and other discretionary fees on residential mortgage loans to plaintiff and the Class than it imposed on non-minority mortgage borrowers, Greenpoint has

1 | discriminated against plaintiff and the Class concerning their ability to participate in real estate-

2 | related transactions, and in the terms and conditions of such transactions, in violation of the Fair

3 | Housing Act. 42 U.S.C. §3605(a).

4 |       84.    In addition, defendant's pricing policies and procedures (including yield spread

5 | premiums), which provide financial incentives to their loan officers, mortgage brokers and

6 | correspondent lenders to make subjective decisions to increase interest rates and charge additional

7 | fees and costs, had a disparate impact upon plaintiff and the Class.

8 |       85.    As a proximate result of defendant's violation of 42 U.S.C. §3605, plaintiff and the

9 | Class have been injured and are entitled to injunctive and declaratory relief and damages, or make

10 | whole equitable relief.

11 |       86.    In addition, defendant's conduct as alleged herein was intentional, willful, wanton,

12 | reckless, malicious, outrageous, or otherwise aggravated beyond mere negligence. Greenpoint acted

13 | with malice and reckless indifference to the federally protected rights of plaintiff and the Class. As a

14 | result, plaintiff and the Class are entitled to punitive damages.

15 |       87.    Moreover, defendant continues to discriminate in violation of the Fair Housing Act

16 | against the Class every time defendant provides a home mortgage loan as described herein. If not

17 | enjoined from such violation by the Court, defendant will continue to engage in conduct that

18 | disregards the rights of plaintiff and the Class, and cause plaintiff and the Class irreparable injury for

19 | which there is no adequate remedy at law. 42 U.S.C. §3613(c).

20 |       88.    Plaintiff and the Class ask this Court to declare the rights of the parties herein

21 | regarding defendant's obligation to participate in credit transactions without discriminating against

22 | applicants for credit on the basis of the applicants' race.

23 | **PRAYER FOR RELIEF**

24 |     WHEREFORE, plaintiff individually and on behalf of the Class, respectively requests the

25 | following relief:

26 |     A.    An order determining that the action is a proper class action pursuant to Rule 23 of

27 | the Federal Rules of Civil Procedure;

28 |

1        B.    A Judgment awarding plaintiff and the Class costs and disbursements incurred in

2   connection with this action, including reasonable attorneys' fees, expert witness fees and other costs;

3        C.    A Judgment granting extraordinary equitable and/or injunctive relief as permitted by

4   law or equity, including rescission, restitution, reformation, attaching, impounding, or imposing a

5   constructive trust upon, or otherwise restricting, the proceeds of defendant's ill-gotten funds to

6   ensure that plaintiff and Class Members have an effective remedy;

7        D.    A judgment awarding plaintiff and the Class compensatory damages according to

8   proof;

9        E.    A Judgment awarding punitive damages to plaintiff and the Class;

10       F.    A Judgment granting declaratory and injunctive relief and all relief that flows from

11  such injunctive and declaratory relief;

12       G.    A Judgment awarding pre-judgment interest to plaintiff and the Class; and

13       H.    A Judgment or other Order granting such other and further relief as the Court deems

14  just and proper including, but not limited to, recessionary relief and reformation.

## JURY DEMAND

16       Plaintiff, on behalf of himself and all others similarly situated, hereby demand a try by jury

17  on all issues so triable.

18  DATED: January 25, 2008                  COUGHLIN STOIA GELLER
                                              RUDMAN & ROBBINS LLP
19                                           JOHN J. STOIA, JR.
                                             THEODORE J. PINTAR
20                                           LESLIE E. HURST

21

22                                           _____
                                             THEODORE J. PINTAR
23

24                                           655 West Broadway, Suite 1900
                                             San Diego, CA  92101
25                                           Telephone:  619/231-1058
                                             619/231-7423 (fax)

26

27

28

1

2

3

4

5

6

7    S:\CptDraft\Insurance\CPT Greenpoint.doc

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BONNETT, FAIRBOURN, FRIEDMAN
    & BALINT, P.C.
ANDREW S. FRIEDMAN
WENDY J. HARRISON
2901 N. Central Avenue, Suite 1000
Phoenix, AZ  85012
Telephone:  602/274-1100
602/274-1199 (fax)

Attorneys for Plaintiff

# EXHIBIT

## simplyescrow

13400 Sabre Springs Parkway, Suite 275 • San Diego, CA 92128 • (858) 391-5585 • Fax (858) 486-3973

### BORROWER STATEMENT
Final

| | |
|---|---|
| Escrow Number: 060452LL | Title Order Number: 01130681-04 |
| Escrow Officer: Liliana Lopez | Date: 08/18/2006 - 1:38:00PM |
| | Closing Date: 08/17/2006 |

Borrower: Jorge Salazar

Property: 4172 & 4174 51st, San Diego, CA 92105

| DESCRIPTION | DEBITS | CREDITS |
|---|---|---|
| **TOTAL CONSIDERATION** | | |
| **TITLE CHARGES** | | |
| Lender/Mortgagee Premium for 475,000.00: Lawyers Title | 1,053.00 | |
| Deed Recording- 2006-0589025: Lawyers Title | 69.00 | |
| Endorsement: Lawyers Title | 50.00 | |
| Sub Escrow Fee: Lawyers Title | 40.00 | |
| Messenger Fees: Lawyers Title | 80.00 | |
| **ESCROW CHARGES TO: Simply Escrow, Inc.** | | |
| Escrow Fee | 495.00 | |
| Wire Fee | 25.00 | |
| Messenger Fee | 25.00 | |
| Document Preparation Fee | 50.00 | |
| EDocs | 100.00 | |
| **LENDER CHARGES** | | |
| New Deed of Trust to Greenpoint Mortgage: | | 475,000.00 |
| Interest Adjustment From 8/17/2006 To 9/01/2006, 15 Days, @ 89.4700/per day: Greenpoint Mortgage | 1,342.05 | |
| Tax Registration: Greenpoint Mortgage | 79.00 | |
| Flood Determination: Greenpoint Mortgage | 11.00 | |
| Document Preparation: Greenpoint Mortgage | 575.00 | |
| Origination Fee: TLN Financial | 11,625.00 | |
| Processing Fee: TLN Financial | 1,290.00 | |
| Yield Spread Premium: TLN Financial POC $2,375.00 | | |
| **LOAN PAYOFF: Countrywide Home Loans** | | |
| Principal Balance | 440,000.00 | |
| Interest Per Diem From 8/01/2006 To 8/19/2006, 18 Days, @ 88.6111 | 1,627.38 | |
| Statement / Demand Fee | 69.00 | |
| Reconveyance Fee | 45.00 | |
| Prepayment Penalty | 13,200.00 | |
| Total Loan Payoff | | 454,941.38 |
| **ADDITIONAL DISBURSEMENTS:** | | |
| Notary: Sandy Ozua | 150.00 | |
| Principal Reduction: Greenpoint Mortgage | 749.57 | |
| Doc Fee: Sandy Ozua | 250.00 | |
| **BALANCE DUE YOU** | 2,000.00 | |
| **TOTALS** | 475,000.00 | 475,000.00 |

THIS IS A FINAL CLOSING STATEMENT

X V. U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

**SETTLEMENT STATEMENT**

*simplyescrow*

e

13400 Sabre Springs Parkway, Suite 275 • San Diego, CA 92128 • (858) 391-5585 • Fax (858) 485-3373

OMB No. 2502-0265

| | | | | |
|---|---|---|---|---|
| B. TYPE OF LOAN | | | | |
| 1. ☐ FHA | 2. ☐ FHMA | 3. ☒ CONV. UNINS. | | |
| 4. ☐ VA | 5. ☐ CONV. INS. | | | |
| 6. FILE NUMBER: 060452LL | | 7. LOAN NUMBER: C090307794 | | |
| 8. MORTGAGE INS. CASE NO.: | | | | |

C. NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

D. NAME & ADDRESS OF BORROWER:  Jorge Salazar

E. NAME & ADDRESS OF SELLER:

F. NAME & ADDRESS OF LENDER:  Greenpoint Mortgage

G. PROPERTY LOCATION:  4172 & 4174 51st, San Diego, CA 92105

H. SETTLEMENT AGENT:  Simply Escrow, Inc.
  PLACE OF SETTLEMENT: 13400 Sabre Springs Parkway, Ste 275, San Diego, CA  92128 (858) 391-5585

I. SETTLEMENT DATE:  8/17/2006   Final

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| **100. Gross Amount Due From Borrower:** | | **400. Gross Amount Due To Seller:** | |
| 101. Contract sales price | | 401. Contract sales price | |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower: (line 1400) | 18,058.62 | 403. | |
| 104. Payoff To Countrywide Home Loans | 454,941.38 | 404. | |
| 105. | | 405. | |
| | | | |
| | | | |
| | | | |
| | | | |
| **Adjustments For Items Paid By Seller In Advance:** | | **Adjustments For Items Paid By Seller In Advance:** | |
| 106. City/town taxes        to | | 406. City/town taxes        to | |
| 107. County taxes        to | | 407. County taxes        to | |
| 108. Assessments        to | | 408. Assessments        to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 113. | | 413. | |
| 114. | | 414. | |
| 115. | | 415. | |
| 116. | | 416. | |
| **120. Gross Amount Due From Borrower:** | 473,000.00 | **420. Gross Amount Due To Seller:** | |
| **200. Amounts Paid By Or In Behalf Of Borrower:** | | **500. Reductions In Amount Due To Seller:** | |
| 201. Deposit or earnest money | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 475,000.00 | 502. Settlement charges to seller (line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff 1st Mtg. Ln. | |
| 205. | | 505. Payoff 2nd Mtg. Ln. | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| | | | |
| | | | |
| **Adjustments For Items Unpaid By Seller:** | | **Adjustments For Items Unpaid By Seller:** | |
| 210. City/town taxes        to | | 510. City/town taxes        to | |
| 211. County taxes        to | | 511. County taxes        to | |
| 212. Assessments        to | | 512. Assessments        to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. Total Paid By/For Borrower:** | 475,000.00 | **520. Total Reductions In Amount Due Seller:** | |
| **300. Cash At Settlement From/To Borrower:** | | **600. Cash At Settlement From/To Seller:** | |
| 301. Gross amount due from borrower (line 120) | 473,000.00 | 601. Gross amount due to seller (line 420) | |
| 302. Less amount paid by/for borrower (line 220) | 475,000.00 | 602. Less reductions in amount due seller (line 520) | |
| 303. Cash (☐FROM) (☒TO) Borrower: | 2,000.00 | 603. Cash (☐TO) (☐FROM) Seller: | 0.00 |

Previous Edition Is Obsolete
Form No. 1581
3/86

Page 1 of 2

SB-4-3538-000-1
HUD-1 (3-86)
RESPA, HB 4305.2

| | SETTLEMENT CHARGES | Escrow: 060452LL | | |
|---|---|---|---|---|
| | | | Paid From Borrower's Funds At Settlement | Paid From Seller's Funds At Settlement |
| **700. Sales/Broker's Commission** Based On Price $ @ % = | | | | |
| Division of Commission (line 700) As Follows: | | | | |
| 701. $ to | | | | |
| 702. $ to | | | | |
| 703. Commission paid at settlement | | | | |
| 704. | | | | |
| **800. Items Payable In Connection With Loan:** | | | | |
| 801. Loan Origination fee % TLN Financial | | | 11,625.00 | |
| 802. Loan Discount % | | | | |
| 803. Appraisal fee to: | | | | |
| 804. Credit report to: | | | | |
| 805. Lender's inspection fee | | | | |
| 806. Mortgage insurance application fee to | | | | |
| 807. Assumption fee | | | | |
| 808. Tax Registration To: Greenpoint Mortgage | | | 79.00 | |
| 809. Flood Determination To: Greenpoint Mortgage | | | 11.00 | |
| 810. Document Preparation To: Greenpoint Mortgage | | | 575.00 | |
| 811. Processing Fee To: TLN Financial | | | 1,290.00 | |
| 812. Yield Spread Premium To: TLN Financial POC $2,375.00 | | | | |
| 813. | | | | |
| 814. | | | | |
| 815. | | | | |
| 816. | | | | |
| **900. Items Required By Lender To Be Paid In Advance:** | | | | |
| 901. Interest from 8/17/2006 to 9/01/2006 @$ 89.4700 /day | | | 1,342.05 | |
| 902. Mortgage insurance premium for mo. to | | | | |
| 903. Hazard insurance premium for yrs. to | | | | |
| 904. Flood insurance premium for yrs. to | | | | |
| 905. | | | | |
| 906. | | | | |
| **1000. Reserves Deposited With Lender:** | | | | |
| 1001. Hazard insurance months @ $ per month | | | | |
| 1002. Mortgage insurance months @ $ per month | | | | |
| 1003. City property taxes months @ $ per month | | | | |
| 1004. County property taxes months @ $ per month | | | | |
| 1005. Annual assessments months @ $ per month | | | | |
| 1006. Flood insurance months @ $ per month | | | | |
| 1007. months @ $ per month | | | | |
| 1008. Aggregate Adjustment | | | | |
| 1009. | | | | |
| **1100. Title Charges** | | | | |
| 1101. Settlement or closing fee to Simply Escrow, Inc. | | | 495.00 | |
| 1102. Abstract or title search to | | | | |
| 1103. Title examination to | | | | |
| 1104. Title insurance binder to | | | | |
| 1105. Document preparation to Simply Escrow, Inc. | | | 50.00 | |
| 1106. Notary fees to | | | | |
| 1107. Attorney's fees to (includes above item Numbers: ) | | | | |
| 1108. Title insurance to Lawyers Title (includes above item Numbers: ) | | | 1,053.00 | |
| 1109. Lender's coverage $ 475,000.00 Premium: $1,053.00 | | | | |
| 1110. Owner's coverage $ | | | | |
| 1111. Endorsement to Lawyers Title | | | 50.00 | |
| 1112. Sub Escrow Fee to Lawyers Title | | | 40.00 | |
| 1113. Messenger Fees to Lawyers Title | | | 80.00 | |
| 1114. Exhibit "B" Attached Hereto | | | 219.00 | |
| **1200. Government Recording and Transfer Charges:** | | | | |
| 1201. Recording fees: Deed $ ;Mortgage $ ;Releases $ | | | | |
| 1202. City/county tax/stamps: Deed $ ;Mortgage $ | | | | |
| 1203. State tax/stamps: Deed $ ;Mortgage $ | | | | |
| 1204. | | | | |
| 1205. | | | | |
| **1300. Additional Settlement Charges:** | | | | |
| 1301. Survey to | | | | |
| 1302. Pest inspection to | | | | |
| 1303. Notary to Sandy Ozua | | | 150.00 | |
| 1304. Principal Reduction to Greenpoint Mortgage | | | 749.57 | |
| 1305. Doc Fee to Sandy Ozua | | | 250.00 | |
| 1306. | | | | |
| 1307. | | | | |
| 1308. | | | | |
| 1309. | | | | |
| 1310. | | | | |
| 1311. | | | | |
| 1312. | | | | |
| 1313. | | | | |
| **1400. Total Settlement Charge** *(Enter on line 103, Section J - and - line 502, Section K)* | | | 18,058.62 | |

Form No. 1582 Page 2 of 2 SB-4-3538-000-1

ATTACHMENT TO HUD 1                                      Escrow No.:           060452LL
Settlement Date:  8/17/2006                              Title No.:        01130681-04
                                                              Page:         1

EXHIBIT A: (HUD Section 100)                             Buyer Amount  Seller Amount
Gross Amount Due From Borrower - Loan Payoff Breakdown:

**Countrywide Home Loans**
Principal Balance To: Countrywide Home Loans                440,000.00
Interest Per Diem From  8/01/2006 to  8/19/2006 @ $    88.6111 To: Countrywide Hom    1,627.38
Statement / Demand Fee To: Countrywide Home Loans             69.00
Reconveyance Fee To: Countrywide Home Loans                   45.00
Prepayment Penalty To: Countrywide Home Loans             13,200.00
                                            Total:       454,941.38


EXHIBIT B: (HUD Section 1100)                           Buyer Amount  Seller Amount
Title Charges:

Wire Fee to Simply Escrow, Inc.                               25.00
Messenger Fee to Simply Escrow, Inc.                          25.00
EDocs to Simply Escrow, Inc.                                 100.00
Deed Recording- 2006-0589025 to Lawyers Title                69.00
                                            Total:          219.00

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a)  PLAINTIFFS | DEFENDANTS |
|---|---|
| JORGE SALAZAR | GREENPOINT MORTGAGE FUNDING, INC., a New York Corporation |
| **(b)** County of Residence of First Listed Plaintiff  San Diego<br>(EXCEPT IN U.S. PLAINTIFF CASES) | County of Residence of First Listed Defendant<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED. |
| **(c)** Attorney's (Firm Name, Address, and Telephone Number)<br>COUGHLIN STOIA GELLER RUDMAN & ROBBINS, LLP<br>655 W. Broadway, Suite 1900, San Diego, CA   619.231.1058 | Attorneys (If Known)<br>'08 CV 0155 WQH AJB |

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury | **PERSONAL INJURY**<br>☐ 362 Personal Injury - Med. Malpractice<br>☐ 365 Personal Injury - Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 610 Agriculture<br>☐ 620 Other Food & Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 R.R. & Truck<br>☐ 650 Airline Regs.<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br>**SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)) | ☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR** | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 441 Voting<br>☐ 442 Employment<br>☒ 443 Housing/ Accommodations<br>☐ 444 Welfare<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate Sentence<br>**Habeas Corpus:**<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition | ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt.Reporting & Disclosure Act<br>☐ 740 Railway Labor Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | ☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 895 Freedom of Information Act<br>☐ 900 Appeal of Fee Determination Under Equal Access to Justice<br>☐ 950 Constitutionality of State Statutes |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**  Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 USC Section 1691, 42 USC Sections 1601-1619 and 42 USC Sections 1981-1982
Brief description of cause:
Violation of the Civil Rights Act

**VII. REQUESTED IN COMPLAINT:**  ☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $    CHECK YES only if demanded in complaint:  JURY DEMAND: ☒ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY**  (See instructions):  JUDGE ___    DOCKET NUMBER ___

DATE  1/25/08

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # 146865    AMOUNT $350    1/25/08 B4    APPLYING IFP ___    JUDGE ___    MAG. JUDGE ___

# UNITED STATES
# DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

# 146865    — BH

January 25, 2008
13:49:22

Civ Fil Non-Pris

USAO #.: 08CV0155 CIVIL FILING
Judge..: WILLIAM Q HAYES
Amount.:                $350.00 CK
Check#.: BC# 52713

Total-> $350.00

FROM: SALAZAR V. GREENPOINT MORTGAGE
      CIVIL FILING